Myer J. Stein, for appellant.

Durkin & Singerman, for respondent.

FITZSIMONS, C. J.   It appears that the order of August 18, 1899, entered herein, failed to recite an affidavit used by defendant upon the motion then before the court.   Said order was made and entered without notice to plaintiff's attorneys, and under rule 3, Gen. Rules Prac., such order was irregular, and upon proper application should have been set aside, with costs.   Plaintiff, in our opinion, duly applied for such relief.   (See order to show cause, dated August 23, 1899.)   Upon the hearing of the last-mentioned motion his application was denied, with costs.   (Order of August 26th.)   In our judgment, both these orders are wrong.   Plaintiff's practice in moving to set aside the order of August 18th was correct, and his application should have been granted.   If such order had been entered upon due notice to him, then, if anything was irregular about it, he might have moved to resettle; but, such order having been obtained without notice, he properly moved to have the same set aside.   See rule 3.   The orders, therefore, of August 18th and August 26th must be set aside, with $10 costs to appellant.   All concur.

---

## JAEGER v. KOENIG.

(City Court of New York, General Term.   November 16, 1899.)

1. PLEADING—ESTOPPEL—HUSBAND AND WIFE.

Where defendant's answer admitted receiving money alleged to have been paid him by plaintiff's wife under duress, he was estopped to deny his wife's agency to receive the money for him, she having in fact received it.

2. CONTRACTS—COMPOUNDING FELONY—PAYMENTS—RECOVERY.

Defendant charged plaintiff's husband with theft, claiming that he had lost $1,800 in his business while the husband had been working for him, and that detectives were going to have her husband locked up, but, if she paid, it would go no further.   Defendant later asked plaintiff what she was willing to do about the matter, and said he would be satisfied if plaintiff would pay him $400.   Plaintiff paid a part of the money, and received a receipt, in which defendant agreed not to apply for a civil arrest. *Held*, that the agreement was to refrain from a civil arrest merely, and not for the compounding of a felony.

3. SAME—DURESS.

Defendant charged plaintiff's husband with having stolen 50 cents, and later charged that he had stolen 75 cents and a bottle of whisky, and stated to plaintiff that detectives were going to have her husband locked up, but, if she paid, it would go no further, whereupon plaintiff, crying, left the place.   At a subsequent interview, defendant told her he had lost $1,800 while her husband was working for him, and stated that he would be satisfied if she paid him $400.   She paid $300, and promised to pay the balance later, asking defendant if everything was all right, to which he replied, "Yes," if her husband kept his mouth shut.   Defendant gave plaintiff a receipt, agreeing to refrain from making a civil arrest if she paid him a further sum of $100.   *Held*, that plaintiff paid the money under duress, and hence was entitled to recover the same.

Appeal from judgment on report of referee.

Action by Marie Louisa Jaeger against John H. Koenig, etc., to recover money paid under duress. From a judgment entered in favor of plaintiff on the report of a referee, defendant appeals. Affirmed.

The report of the referee is as follows:

This action was brought by the plaintiff to recover from the defendant the sum of $300, which she claimed she paid to him under duress and fear produced by threats to imprison her husband for alleged thefts. She pleaded in her complaint a certain receipt or agreement under which she claimed the money was paid. The defendant by his answer made first a general denial, then admitted the genuineness of the receipt pleaded by the plaintiff, admitted receiving $300 from plaintiff, and then alleged, in substance, that the defendant, on the 9th day of November, 1896, had commenced an action in the city court of New York against Simon Jaeger, the husband of the plaintiff, "for larceny of divers sums of money" and property, amounting to $2,000 "damages," and made affidavit to obtain an order of arrest therein; that various steps had been taken, when the plaintiff herein entreated and persuaded the defendant herein, who was plaintiff in that action, to settle the same, which was reluctantly done, and resulted in the agreement set forth in the complaint; that the plaintiff in that action could not, however, prove accurately damages to a greater extent than $555.25. There was no testimony or evidence offered upon the part of the defendant herein, and so we must judge the cause by such evidence as is in, and by the admissions contained in the pleadings. The testimony, so far as it is material, shows that on the 8th of November 1896, the defendant, who kept a saloon, charged Simon Jaeger, his bartender, with the theft of fifty cents. Simon Jaeger was the husband of the plaintiff. He denies the theft, claiming that he had only "held out" the money because it was marked, to see what Koenig would do about it. A man named Horn said to Jaeger, in the presence of Koenig, "Why don't you leave this $430 [which Jaeger had admitted he had in his pocket] here, in case you run away tonight." He answered, "If you are afraid I will run away, why don't you have me locked up now, and make sure of it." Then Koenig told him to go home; that there was plenty of time "to-morrow" to settle the matter. The plaintiff then called upon the defendant, and asked him what was the matter with her husband. He said that her husband had stolen fifty cents from him on November 8th, twenty-five cents the Sunday before, and also a bottle of whisky. He made no mention of any other property at this time. He further said that the detectives were going to have her husband locked up. "If I [meaning this plaintiff] paid, it would go no further," she testified he said to her. Then she, crying, left the place. She returned to Koenig afterwards, and he told her on this occasion that he had lost $1,800 in his business while her husband was working for him. Koenig wanted to know what she was willing to do about the matter. She said she didn't know. A man named Laurenson, who was present, asked Koenig if he was satisfied with $400, and he replied, "Yes." The plaintiff said that she did not understand "this business like this," but would bring the money over in the evening. She returned in the evening, and met the defendant, his wife, his son, Mr. Derrickson, his attorney, and Mr. Laurenson. A receipt was drawn by Derrickson, and signed by all the parties except Mrs. Koenig and her son. The plaintiff thereupon paid over the $300, which was taken by Mrs. Koenig; and she promised to pay $100 later, which, however, has never been demanded. Upon paying the money she asked the defendant, "Well, everything is all right now?" and he said, "If your husband keeps his mouth shut." In reviewing this testimony, we must read it in connection with the receipt set forth in the complaint, and admitted in the answer. It refers to obtaining "an order of arrest," and to Simon Jaeger's desire to avoid the "liability of arrest in said civil action," and that Koenig agrees not to apply "for any civil arrest." The parties hereto were not lawyers, nor skilled in the distinctions between civil suits and criminal prosecutions. The only lawyer who appeared in the transaction was Derrickson. The receipt he drew was signed by all parties, and we must presume that he drew it in a manner to

express their intentions. At least, the defendant cannot be presumed to object to it, for it was drawn by his own attorney, and "approved" by him.

No point can be made by the defendant about the money having been paid to his wife by the plaintiff, and not to him. His answer admits receiving it, and he cannot now be heard to deny the agency through which it came. Adams v. Bank, 116 N. Y. 610, 23 N. E. 7, 6 L. R. A. 491.

The main question is, was this money paid by the plaintiff under duress, and, if so, was it such duress as would entitle her to recover it back? "Where there is no arrest, no imprisonment, no actual force, and it is claimed that a promise was obtained by duress per minas, then whether or not the promise was obtained by duress must usually be a question of fact, and the question cannot be determined as one of law." Dunham v. Griswold, 100 N. Y. 226, 3 N. E. 77. In reading the testimony, as enlightened by the admitted agreement in the complaint, we must come to the conclusion that the "arrest" or "imprisonment" threatened by one party, and feared by the other, was, no matter how inartificial the language of the testimony is, a civil arrest or a civil imprisonment. There is nothing in the case which is in conflict with this. There is no testimony that Koenig threatened anything more than arrest. He made no mention of a stated imprisonment. Therefore we can immediately dismiss from consideration the question raised by the defendant, that the operation was really the compounding of a felony. It was in fact an arrangement to refrain from civil action.

Now, as to the duress which compelled the plaintiff to make the payments, if any duress really existed. The testimony shows that, when the plaintiff first called on the defendant, he told her that her husband had stolen fifty cents; on the next occasion, he said fifty cents and seventy-five cents; and on the third visit he claimed $1,800. Yet there was nothing to show why the defendant kept constantly increasing his demands. What may in one case amount to duress in another might not. Each must be judged by surrounding circumstances. In this case we cannot see that the payment was made otherwise than under duress. Koenig said on the first occasion that the detectives were after her husband, but, if she would pay, the matter would go no further. This was the first said about her paying; and, crying, she left the place. Throughout the whole transaction she was always apparently intent upon the purpose of shielding her husband. Even in the final closing, her last question was, "Will it be all right now?" The first intimation about her paying came from Koenig, when he told her that it would go no further if she paid. The testimony is clear to our minds that the plaintiff would not have paid if the threat of the detectives locking up her husband had not been made. She did not call on Koenig to settle anything in the first place. She merely wanted to know what was the matter with her husband. It was Koenig who suggested settlement by her. And the receipt set forth in the complaint distinctly states that the settlement was to be made with "her own money." The receipt clearly evidences, also, the reason for her paying, so that her husband might avoid arrest; and it shows that, if she paid a further sum of $100, Koenig would agree to refrain from making a civil arrest. Throughout the entire document the idea stands clean-cut that, if the wife paid, the husband would not be arrested. This is sufficient to bring the case within the decisions as to the payment under duress.

Upon what theory, then, could the case be supported if we decided that Mrs. Jaeger paid this money voluntarily? It certainly was not a gift, for her crying, and reluctance to part with the money, dispose of that. It was not in settlement of a debt, for none existed between her and the defendant. It was paid then by her, clearly, under the defendant's suggestion that the detectives were going to lock her husband up, but that, if she paid, the matter would go no further. The only reason why the defendant obtained the money was because of the threat of the detectives being after her husband. Was this sufficient duress? We think it was.

There are several distinctions in the lines of cases covering duress through threats of imprisonment. The cases of Smith v. Storm, 1 Wend. 37, Dunham v. Griswold, 100 N. Y. 226, 3 N. E. 76, and Day v. Manufacturing Co., 13 Misc. Rep. 320, 34 N. Y. Supp. 463, are to the effect that, where one pays money under threats that litigation or imprisonment may befall him personally, he

cannot recover it back. The case of Haynes v. Rudd, reported in 83 N. Y. 252, and in 102 N. Y. 374, 7 N. E. 287, was to the effect, apparently. that, where a father paid money voluntarily to shield his son, it could not be recovered back. In the case of Schoener v. Lissauer, 107 N. Y. 116, 13 N. E. 741, a mortgage was canceled because obtained from a mother under threats of imprisonment of her son if she did not execute it. The court held that the case was not in conflict with Haynes v. Rudd; the distinction being, apparently, that in Haynes v. Rudd the offer to compromise was made voluntarily by the father of the boy, and in Schoener v. Lissauer the execution of the mortgage was obtained by threats of imprisoning her son. The cases of Eadie v. Slimmon, 26 N. Y. 1, and Adams v. Bank, 116 N. Y. 606, 23 N. E. 7, 6 L. R. A. 491, are cases exactly in point with this case; and the language of the latter case, at page 611, 116 N. Y., page 8, 23 N. E., and page 494, 6 L. R. A., states: "The rule is firmly established that, in relation to husband and wife, or parent and child, each may avoid a contract induced or obtained by threats of imprisonment of the other, and it is of no consequence whether the threat is of a lawful or unlawful imprisonment." There is nothing in the testimony to show that the plaintiff paid this money upon any suggestion made by her husband that he might be arrested. On the contrary, the testimony shows that he strongly protested his fearlessness of arrest. Nor was there anything to show that she paid it only for the purpose of having her husband retain his place. In this respect the case is unlike the case of Girty v. Oil Co., 1 App. Div. 224, 37 N. Y. Supp. 369, or Day v. Manufacturing Co., supra. There is nothing to show that the money was paid except under duress of the threat made by the defendant. It is not necessary in these cases to show any definite or precise method of duress. The question of duress is one of fact, and the referee must decide the question according to all the facts before him. I am. of the opinion, therefore, that judgment should be for the plaintiff in the sum of three hundred dollars.                      Adrian T. Kiernan, Referee.

Argued before FITZSIMONS, C. J., and McCARTHY and CON- LAN, JJ.

Geo. H. Hart, for appellant.
Samuel Scoville, Jr., for respondent.

PER CURIAM. The judgment will be affirmed, upon the opinion. of the referee, with costs.

---

(29 Misc. Rep. 278.)

## YOUNG v. CAREY.

(Schenectady County Court. October, 1899.)

REPLEVIN—JUSTICES OF THE PEACE—AFFIDAVIT OF VALUE.
    Code Civ. Proc. § 2862, subd. 7, provides that a justice of the peace shall have jurisdiction of an action to recover chattels where their value, as stated in the affidavit of the plaintiff, does not exceed $200. Id. § 2920, provides that the plaintiff may, when summons is issued in such an action, but not afterwards, require the chattels to be replevied, and that for that purpose he must deliver to the justice an affidavit and undertaking. Held, in an action for the recovery of a chattel, where the chattel is not sought to be replevied before judgment, an affidavit as to value is not required.

Appeal from city court of Schenectady.
Action by Levi A. Young against John E. Carey. From a judg- ment dismissing plaintiff's complaint, he appeals. Reversed.

John D. Mullen, for appellant.
R. J. & Frank Cooper (R. J. Cooper, of counsel), for respondent.